```
UNITED STATES DISTRICT COURT                    USDC SDNY
SOUTHERN DISTRICT OF NEW YORK                   DOCUMENT
------------------------------------------------X  ELECTRONICALLY FILED
                                                :  DOC #: _____
EVA EASON; MEGAN SCHOEFFLING;                   :  DATE FILED: December 20, 2017
NATIONAL FEDERATION OF THE BLIND;               :
and THE CENTER FOR INDEPENDENCE OF              :
THE DISABLED,                                   :
                                                :      16-cv-4292 (KBF)
                    Plaintiffs,                 :
                                                :      OPINION & ORDER
        -v-                                     :
                                                :
NEW YORK STATE BOARD OF ELECTIONS;              :
and NEW YORK STATE DEPARTMENT OF                :
MOTOR VEHICLES,                                 :
                                                :
                    Defendants.                 :
                                                :
------------------------------------------------X
```

KATHERINE B. FORREST, District Judge:

In today's world, access to an entity's website is, in many respects, access into its shop or office. So very much of our daily life is now spent on the internet; we are constantly referred by an entity to its website as a more convenient, less expensive or better way of accessing services. If the disabled are denied access to a website, the "door" to a vast array of information and services is closed; if they are denied meaningful access, they are getting less than that to which the law entitles them.

Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA"), long ago provided that the disabled are entitled to meaningful access to a public entity's programs and services. Just as buildings have architecture that can prevent meaningful access, so too can software.

This lawsuit, commenced by two visually impaired individuals along with the National Federation for the Blind and the Center for Independence for the Blind (collectively, "plaintiffs"), seeks redress for what plaintiffs assert is a lack of access to the services offered by the New York State Department of Motor Vehicles ("DMV") and the New York State Board of Elections ("SBOE"). (See generally Third Amend. Compl. ("TAC"), ECF No. 128.) The websites provide a host of services relating to voter registration, polling location information, organ donation, gifting of motor vehicles, vehicle registration and use, and non-vehicle identity cards.

Plaintiffs have asserted claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794. Prior to the fall 2016 presidential election, plaintiffs brought an emergency application for mandatory injunctive relief, seeking immediate changes to the portion of the SBOE website relating to voter registration. (ECF No. 26.) After briefing and a hearing, the parties stipulated to withdrawal of that motion on August 11, 2016. (ECF No. 48.) That stipulation included an agreement to make certain changes on an agreed timeline. Plaintiffs brought a second emergency application a little less than two months later, claiming that certain agreed-upon changes had not been made. (ECF No. 81.) In a Memorandum Decision & Order dated October 7, 2016, the Court denied that motion. (ECF No. 87.) Thereafter, the parties engaged in fact and expert discovery. Both have now moved for summary judgment (ECF Nos. 151, 152), and defendants have additionally moved to preclude plaintiffs' proffered expert, Sharron Rush

("Rush"), Executive Director of Knowability, Inc. (ECF No. 158). The Court has received hundreds of pages of submissions in connection with these motions and held extensive oral argument on December 19, 2017.

The submissions and the oral argument leave no doubt as to certain points. First, New York State is committed to ensuring accessibility to the disabled and has dedicated resources and made great efforts to do so. Second, dueling technological developments have resulted in even more robust DMV and SBOE websites, but also additional ways to enhance accessibility for the blind and visually disabled. Accordingly, the circumstances in both respects—in terms of what these websites have offered as a general matter, and the type of accessibility that is possible for the blind and visually impaired—has changed. That New York State (with budgetary and personnel constraints endemic to all governmental entities) may not be entirely state of the art, particularly when the "art" dynamically changes, is perhaps unsurprising; and certainly any lack of capability for the disabled on the DMV and SBOE websites does not signal a lack of State commitment.

As previously noted, both sides have now moved for summary judgment, and defendants have also moved to preclude plaintiffs' proffered expert. If defendants' preclusion motion were successful, plaintiffs' claims would necessarily fail as the proffered expert (Rush) is the conduit for plaintiffs' evidence as to ongoing website deficiencies.

3

For the reasons set forth below, the Court DENIES both motions for summary judgment, and further DENIES defendants' motion to preclude Rush. This case shall proceed to a bench trial.

I. THE PARTIES' ARGUMENTS OR, "SHIPS PASSING IN THE NIGHT"

Plaintiffs' principle contention is that they have brought a lawsuit seeking meaningful access to the State's DMV and SBOE websites, which provide important information to which they have a legal right of access. At the outset of the lawsuit and in several amended pleadings, plaintiffs have specifically identified a number of issues with the websites that allegedly present barriers to meaningful access. According to plaintiffs, although discovery has revealed that the State has fixed many of those specific issues, websites are "dynamic" (in the sense that information and capabilities are regularly changing), and so new issues have arisen and others are likely to arise in the future. Plaintiffs argue that what is most needed are clear policies, processes, and procedures to ensure that the relevant websites are designed and maintained in an accessible manner.

Defendants are fighting a different battle. According to defendants, plaintiffs filed a complaint raising certain specific issues, and the defendants have now fixed those issues. The "new" issues that plaintiffs have since identified, according to the defendants, raise fundamental notice pleading concerns under Rule 8 of the Federal Rules of Civil Procedure. Further, certain of the new issues that have been raised relate to website services that no named plaintiff has evinced a personal desire to use or access, raising standing issues. Thus, according to defendants, there is no

4

basis for any relief as plaintiffs' initial claims have been mooted, and the new claims are deficient for multiple reasons. And, in all events, according to defendants, plaintiffs have proffered an expert report that has numerous deficiencies including a failure to provide a clear statement of methodology that may be used by the Court to make a determination of site utility.

II. DISCUSSION

The Court has spent a great deal of time considering the parties' submissions. A few issues can be taken off the table at the outset. First, the TAC is a broad pleading—far broader than the specific list of issues on which defendants have concentrated. (See generally TAC.) Without attempting to be exhaustive, there are numerous places in the complaint in which the plaintiffs indicate that they would like to access certain specific information, as well as "other information and services Defendants' websites." (See TAC ¶¶ 6, 13, 16.) In addition, the TAC refers to a lack of meaningful access to specific services as well as to the "websites" more generally. (See, e.g., TAC ¶¶ 25, 27.) The specific issues that defendants have focused on are referred to in certain instances as "includ[ing], but not limited to." (See, e.g., TAC ¶ 27.) Further, the TAC calls out general issues with lack of text alternatives for images and non-text content, inadequate alternatives, insufficient contrast ratios, inadequate and absent field labels on forms, inaccessible PDFs, poor interaction with keyboard commands, poor link text, and the like. (TAC ¶ 27.) In short, the breadth of the language in the TAC, combined with the Second Circuit's decision in Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 188-89 (2d Cir. 2013), persuade

5

this Court this case is not limited to the specific issues that defendants have focused on. Thus, plaintiffs' claims are not deficient under Fed. R. Civ. P. 8, and we can take that off the table.[1]

Second, there are no standing issues. Kreisler makes clear that a lack of access to one part of a facility may fairly put other areas that a particular plaintiff did not and simply could not access in play. Id. at 188 (Agreeing with the Ninth and Eighth Circuits that a plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability; "because Kreisler has standing to pursue injunctive relief as to the Diner's entrance, he has standing to seek removal of all barriers inside the Diner related to his disability that he would likely encounter were he able to access the Diner." And, "Kreisler need not personally encounter each ADA violation within the Diner in order to seek its removal.") This is particularly true with regard to websites, since it is well known and accepted that use of a website is dynamic; people are expected to access a site and essentially explore it, to find out what they can do, and what services are offered on the site. Thus, lack of meaningful access is the equivalent of an inability to engage in that very exploration. With respect to websites run by the State government, having a meaningful ability to understand precisely what is and is not on offer (information or services) is a right of every citizen. Thus, the standing issues are also off the table.

---

[1] The Court notes that its determination here is particularly influenced by the policies that the ADA and Rehabilitation Act seek to further. That is not to say that in all cases concerning websites, all aspects of the website are immediately at issue. Rather, here, based on the specific language in the TAC and the manner in which this case has been litigated, the Court declines to find a Rule 8 issue.

The last of the big issues raised on these motions is the motion to preclude the proffered expert report of Sharron Rush. Success on this motion would be dispositive of plaintiffs' claims and require judgment for defendants. In terms of substance, let me be very clear: this is a non-frivolous motion. However, under the particular facts and circumstances here, the Court denies it.

The first issue raised by the motion concerns timeframe. Rush and the defendants utilize different timeframes for their evaluation of the sites. In addition, it is not clear exactly when Rush's evaluation(s) occurred, and thus it is unclear whether the various issues she has identified continue to exist. The Court is left wondering whether the website issues have been addressed or not. For all the Court knows (because the work of Rush predates the work of defendants' expert), all barriers to meaningful access may have been resolved. This is further complicated by the "ships passing in the night" nature of the two reports—Rush approaching her report with a broad brush, not tying the issues she identifies to any particular program, benefit, or service (even by example).[2]

It is also unclear to the Court what exactly Rush has done to identify the accessibility barriers she recites. This is a significant issue and one that the plaintiffs should have been more careful to avoid. It is properly identified by defendants as a concern. In contrast, the report of defendants' expert, Jonathan Avila, is exactly what the Court would expect from an expert: he notes his

---

[2] As the parties are aware, this resulted in the Court requesting that the parties cross-reference those issues identified in the TAC with those identified in the Rush declaration, in some attempt to figure out how what she did maps onto the services on the websites. (By separate Order, the Court is vacating this request in light of the trial that will be scheduled.)

7

methodology clearly, he explains each step that occurred, and he explains his results and conclusions. In contrast, Rush's report muddles together a number of items that are only cryptically explained and her methodology comes extremely close to ipse dixit. Also, and of particular significance, is the fact that Rush does not use a standard that the Court can map onto functional utility (which would allow the Court to make the key determination in the case). Stating, as Rush does, that there is a lack of "equal" access does not sufficiently inform the Court about where we are on the spectrum of functional or "meaningful" access. It may be that a lack of equal access nonetheless equates to a lack of meaningful access, but that is certainly not always so. And to make such a factual determination, the Court needs to understand whether the issue identified causes a user to lack any access to a service, to have to spend more than twice the time as a sighted user to access the service, and the like.

In short, there is a strong basis on which this Court could in fact preclude the Rush declaration. Defendants were right to have made this motion. In certain instances, however—and this is one of them—the role of the expert is so fundamental to the disposition of a matter that preclusion leads to final judgment against that party. It is for that reason that the Court is unwilling to order preclusion here. The Court's conclusion is based on a number of competing considerations including that the failings of the Rush report are of a type that the Court views as "fixable", the conduct of plaintiffs is such that the Court does not perceive bad faith or gamesmanship, and, in this case (unlike many commercial

8

cases), there are important policy considerations at stake.  As this is a bench proceeding, and the Court will have the opportunity to question Rush live, the Court does not preclude her at this time.[3]

Where does all of this leave us?  It leaves us with questions of material fact as to whether the DMV and SBOE websites are meaningfully accessible to the blind and the visually impaired.  As the Court stated at oral argument, there is much to be said for a live presentation of the websites using screen reader software.  That would allow the Court to assess whether the benefits and services of the websites are meaningfully accessible. So that is our next step.

As a final—and important—point, the Court specifically wants to acknowledge that it is impressed with the work that New York State has done to attempt to make the DMV and SBOE websites accessible.  It is clear from the defendants' filings in this matter that they take accessibility seriously and have treated it with careful consideration.  Far from neglect, the State appears to be an active and willing partner in attempting to ensure that the blind and visually impaired have meaningful access to these sites.  I commend the State on their efforts to date.  The fact that this matter is proceeding to trial is not a suggestion that the Court has determined that meaningful access does not currently exist—the point is that I simply cannot tell one way or another whether it does on the record before me.

---

[3] It should also be stated that the Court ignores the aspects of the Rush report that discuss policy and practices that should be implemented.  There is not a sufficient foundation for this witness to opine in that area.  If there is a determination that relief is warranted, the Court will work with the parties to fashion appropriate relief.

9

III.  CONCLUSION

The Court hereby DENIES all pending motions and sets this matter down for a trial.  The parties should confer on: (1) whether the Rush report should be revised, and an additional period of expert discovery allowed as a result; (2) whether additional pre-trial findings of fact are necessary or whether the 56.1s submitted in connection with summary judgment might be used as a proxy; and (3) when the trial can occur.  At this time, the Court has trial availability in January and May.  The parties are directed to submit a joint letter on these issues not later than **January 8, 2018**.

The clerk of court is directed to terminate the motions at ECF Nos. 151, 152, and 158.

SO ORDERED.

Dated:  New York, New York
        December 20, 2017

_____
KATHERINE B. FORREST
United States District Judge