**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

EVA EASON, MEGHAN PARKER,
NATIONAL FEDERATION OF THE
BLIND, and the CENTER FOR
INDEPENDENCE OF THE DISABLED,
NEW YORK,

 Plaintiffs,

 v.

NEW YORK STATE BOARD OF
ELECTIONS, NEW YORK STATE
DEPARTMENT OF MOTOR VEHICLES,
TODD D. VALENTINE and ROBERT
BREHM, in their official capacities as Co-
Executive Directors of the Board of
Elections, THERESA EGAN, in her official
capacity as Executive Deputy Commissioner
of the Department of Motor Vehicles, and
GREGORY J. KLINE, in his official
capacity as Deputy Commissioner for
Administration of the Department of Motor
Vehicles,

 Defendants.

**CIVIL ACTION NO. 1:16-cv-04292**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION IN
LIMINE REGARDING THE EXPERT AND REBUTTAL
<u>REPORTS OF JONATHAN AVILA</u>**

I.      **Introduction**

Defendants will be offering the Expert Report of Jonathan Avila dated October 4, 2017 (hereinafter "Avila Report," *see* Decl. of Christina Brandt-Young in Support of Pls.' Mot. in Limine Regarding the Expert and Rebuttal Reports of Jonathan Avila (hereinafter "Brandt-Young Decl."), Ex. A), and the Rebuttal Expert Report of Jonathan Avila dated April 10, 2018 (hereinafter "Rebuttal Report," Brandt-Young Decl., Ex. B), as direct testimony in this matter. In his reports, Mr. Avila accepts as fact several untested hearsay assertions made by Defendants (or the New York State Office of Information Technology Services):  That certain inaccessible content has been removed from Defendants' websites, although he has not confirmed that this actually occurred; that certain content with allegedly improved accessibility has been posted to Defendants' websites, although he has not confirmed that it is there; and that certain untested pages and content are identical to other content that he has indeed tested.  The upshot is Mr. Avila simply accepts Defendants' assertions—vouching for the accessibility of content he has never examined—and then relies on those untested assertions to make conclusions about the accessibility of Defendants' websites overall.

Case law is well settled that although expert testimony may rely on inadmissible evidence, the expert witness may not be used as a conduit for such evidence.  An expert may not "simply transmit" hearsay testimony to the trier of fact, but must "form his own opinions" by applying his own "extensive experience" and a "reliable methodology."  *U.S. v. Mejia*, 545 F.3d 179, 197 (2d Cir. 2008); *see also, e.g., Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) ("a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony . . . .  The appropriate way to adduce factual details of specific past events is, where possible, through persons who witnessed those events" (internal quotations and citations omitted)); *U.S. v.*

*Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (2003) and Federal Rule of Evidence 702 to conclude that expert testimony "should be excluded if the witness is not actually applying expert methodology").  As such, Mr. Avila lacks the requisite information to draw some of his conclusions.  He cannot base his opinion that the websites are accessible on content he has not tested (but that Defendants tell him is accessible) or on content that was not posted to either website at the time of his testing (but that Defendants assure him will be posted soon).

Plaintiffs request that the Court strike the sections of Mr. Avila's reports that contain untested hearsay statements from Defendants, taken as fact, claiming that:  (1) Defendants have taken certain inaccessible content off their websites; (2) they have posted content on their websites that is more accessible than the content that was already there; and (3) different pieces of web content are identical such that they do not need to be assessed for accessibility by Mr. Avila.  The Court should also strike statements in Mr. Avila's reports containing Defendants' self-serving hearsay, as well as Mr. Avila's (or Defendants') speculation about Defendants' practices, policies, and plans for the future.

**II.     The Court should strike the substantive areas of Mr. Avila's reports where he relies on Defendants' self-serving hearsay not supported elsewhere in the record.**

Mr. Avila states in his reports that he relied on conversations with Defendants and their attorneys as a basis for several key facts.  Nothing in the record provides an independent evidentiary basis for the admissibility of these facts.

The Court should strike Mr. Avila's testimony where the following unsupported representations are made:

1. Untested hearsay statements from Defendants that they have taken inaccessible content off their websites:

2

    a. Rebuttal Report at 9: "The third url opined on by Ms. Rush outside the scope of my report [https://www.elections.ny.gov/NYSBOE/hava/Voting_Machines/PostElectionAuditReport.pdf] consists of a SBOE webpage *that I understand from counsel* is not linked to anywhere on the SBOE website, or indexed there; in other words, while it was still physically present on the site at the time Ms. Rush tested it, it was essentially an 'orphan' page, not located from any other portion of the SBOE website, or intended to be used by any member of the public. That page is no longer available at the link included in Ms. Rush's report." [emphasis added]

    b. Rebuttal Report at 36 n. 44 [re: https://dmv.ny.gov/make-office-reservation]: "Since that time [of Avila's original report], *my understanding from DMV (via counsel)* is that the form has been simplified somewhat, with client ID and date of birth fields removed. Additional text was added at the top regarding reservation timing." [emphasis added]

    c. Rebuttal Report at 37 n. 45: "https://dmv.ny.gov/files/ccrp1pdf; https://dmv.ny.gov/forms/aa33fi.pdf; https://dmv.ny.gov/forms/mv232.pdf. *My understanding, from counsel,* is that the CCRP1 had not yet been revised by DMV's vendor (BrailleWorks) at the time Ms. Rush tested it. *My understanding is* that [the] other two forms have also changed, although in less significant ways, since the time Ms. Rush reviewed it." [emphasis added]

2. Untested hearsay statements from Defendants that certain content with improved accessibility has been posted to Defendants' websites:

    a. Avila Report at 22 n. 28 (*see also infra*): "*It is my understanding from correspondence with ITS* that the last three pages tested of Standalone Motor Voter [DMV's general electronic registration application webpage] and of the Renewal Motor Voter [https://voterreg.dmv.ny.gov/MotorVoter/cidv/cidvEDMV, https://voterreg.dmv.ny.gov/MotorVoter/register/R1EDMV, https://voterreg.dmv.ny.gov/MotorVoter/cidvResponse, and https://voterreg.dmv.ny.gov/MotorVoter/register/R0] are identical, whether the user is navigating from the renewal transaction or registering to vote only. The first pages differ only slightly, *and ITS has informed me* it has implemented the changes recommended as a result of the Level Access audit to both the Standalone Motor Voter and Renewal Motor Versions of this page." [emphasis added]

    b. Avila Report at 27 n. 41 [re: DMV Standalone License/ID Renewal] (*see also infra*): "As noted above, Level Access was only able to utilize dummy credentials for drivers on Standalone Renewal and in some case in

3

>   MyDMV Renewal. . . . The JAWS tester (for MyDMV Renewal) and JAWS/NVDA tester (for Standalone Renewal) did not review a short page with a single prompt regarding length of renewal. Level Access only had driver credentials available for that testing and that step is not present for driver's licenses. However, *ITS has confirmed that* it applied any changes to the DOM recommended as a result of the rest of the audit to that page." [emphasis added]

3. Untested hearsay statements from Defendants that different pieces of web content are identical, or not "significantly" changed, such that they do not need to be assessed by Mr. Avila and are accessible sight unseen:

   a. Avila Report at 22 n. 28: "*It is my understanding from correspondence with ITS* that the last three pages tested of Standalone Motor Voter and of the Renewal Motor Voter are identical, whether the user is navigating from the renewal transaction or registering to vote only. The first pages differ only slightly, and *ITS has informed me* it has implemented the changes recommended as a result of the Level Access audit to both the Standalone Motor Voter and Renewal Motor Versions of this page." [emphasis added]

   b. Avila Report at 27 n. 41 [re: DMV Standalone License/ID Renewal]: "As noted above, Level Access was only able to utilize dummy credentials for drivers on Standalone Renewal and in some case in MyDMV Renewal. However, *DMV and ITS informed Level Access* that the DOM of the tested driver's ID renewal transaction pages is identical to the equivalent non-driver license renewal transaction where they overlap, and that any improvements to the driver transaction recommended by Level Access were also applied to the non-driver transaction. As such, the DOM of the two transactions—and the ability of blind and visually impaired users to access those transactions—should be identical." [emphasis added]

   c. Rebuttal Report at 11 n.9: "*My understanding from SBOE (via counsel)* is that the content of the SBOE homepage has changed since the time of my report but that no significant changes have been made to the page." [emphasis added]

4. Statements containing Defendants' self-serving hearsay and Mr. Avila's (or Defendants') speculation about Defendants' practices, policies, and plans for the future:

   a. Avila Report at 19-20: ". . . *[M]y understanding is* that DMV ensures it [DMV's text-only menu and homepage] is updated whenever the

4

homepage is updated, as required by § D1194.22(k) of the Section 508 Standards. As a practical matter, this means that all content on DMV's home page and menu is accessible to the blind and visually impaired because, at a minimum, it can be obtained on DMV's second, fully accessible, version of the menu and homepage." [emphasis added] Mr. Avila has neither participated in nor observed implementation of this alleged policy or practice.

b. Avila Report at 26 n. 37 [re: CAPTCHA on MyDMV sign up and sign in pages]: "Thus, some users could find accessing the CAPTCHA problematic in these circumstances. However, *I am informed that*, in the event this problem persisted for any individual user, that user could contact DMV by telephone, and, as when the entire website is down, DMV will complete the requested MyDMV transaction." [emphasis added] Mr. Avila's understanding appears to come from Defendants' representations to him, not from his own observations.

c. Avila Report at 33 n.55 [re: NYS BOE Absentee Ballot Application]: "In addition, *my understanding from SBOE* is that the form will not be rejected if the Board Use Only section is filled out." [emphasis added] Mr. Avila's understanding appears to come from Defendants' representations to him, not from his own observations.

d. Avila Report at 34 [re: BOE FOIL form]: "*Level Access has been informed* that the SBOE website's .NET Framework cannot support a later version of CAPTCHA, and that upgrades of the .NET Framework cannot be completed until approximately the end of 2017." [emphasis added] This information appears to be based on Defendants' representations to Mr. Avila, not on his own observations or subject matter expertise.

e. Rebuttal Report at 17-18 [re: BOE form to request a hard copy voter registration application]: "As the original report noted, the form contains an older version of CAPTCHA technology due to the then-inability of the SBOE website to support a later version of the CAPTCHA. Report at 35 n. 60. The older version of the CAPTCHA can sometimes be utilized by non-sighted users, although it can also, in some instances, be difficult. *My understanding (through counsel)* is that SBOE has now been able to locate a different CAPTCHA that is supportable by the SBOE website. As of April 3, SBOE replaced the old CAPTCHA. The newer CAPTCHA is similar to the one discussed on pages 25-26 of my previous report." [emphasis added] Mr. Avila's information about the new CAPTCHA, and the capabilities of the SBOE website to support any version of the same, appears to derive entirely from counsel, rather than from his own observations.

f. Rebuttal Report at 25: "*My understanding, based on my review of excerpts from a declaration by Tom Connolly* in this matter, Dkt. 152-6,

5

      Dkt. 152-6 ¶¶ 32-34, 36-37, is that the current [BOE] unofficial election results page is very difficult to modify, because it is an old page connected to a decades-old database." [emphasis added]  Mr. Avila's understanding comes from Defendants' representations, not from his own observations.

g. Rebuttal Report at 27 [re: unlabeled form fields in the BOE voter registration lookup]:  "... *[B]ased on my review of portions of the declarations of Tom Connolly, my understanding is* that SBOE is aware of the issue that NVDA is not able to compensate for, but has been hesitant to make substantive changes to the page because of the age of the page and the database it is drawing information from, and the possibility of failure for all users of the page." [emphasis added]  Mr. Avila's understanding comes from Defendants' representations (which include speculation), not from his own observations.

h. Rebuttal Report at 28 [re: BOE representative lookup]:  "As with the registration lookup, *my understanding is* that the representative lookup page is connected to an old database, rendering SBOE reluctant to make major changes to that page quickly." [emphasis added]  Mr. Avila's understanding comes from Defendants' representations (which include speculation), not from his own observations.

i. Avila Report at 20 n.20:  "The 'Individuals/Organizations' menu in DMV's header and original form of the carousel in DMV's home page had some inconsistencies with WCAG 2.0 AA and Section 508, which can make navigation of that menu and carousel more difficult. *DMV, however has informed us it intends* to remediate that menu and carousel [on its homepage], and that it was already independently scheduled to replace the menu later this year." [emphasis added]  This information about planned remediation in Mr. Avila's October 4, 2017 report appears to be based on Defendants' speculations and representations to Mr. Avila, not on his own observations or subject matter expertise.

j. Rebuttal Report at 34 n. 42 [re: skip links]:  "Once DMV replaces its current menu with an accessible alternative (meaning that the text-only page is no longer needed) it may be reasonable for DMV to eliminate the skip link leading to the text only home-page."  This information about planned remediation in Mr. Avila's April 10, 2018 rebuttal report appears to be based on Defendants' speculations and representations to Mr. Avila, not on his own observations or subject matter expertise.

**III.     Conclusion**

For the foregoing reasons, Plaintiffs request that the Court strike the sections of Mr. Avila's reports that contain untested hearsay statements from Defendants, taken as fact, claiming: (1) That they have taken inaccessible content off their websites; (2) that they have posted content on their websites that is more accessible than the content that is already there; and (3) that different pieces of web content are identical such that they do not need to be assessed by Mr. Avila.  The Court should also strike statements in Mr. Avila's reports containing Defendants' self-serving hearsay and Mr. Avila's (or Defendants') speculation about Defendants' practices, policies, and plans for the future.

Dated: May 2, 2018
New York, New York

Respectfully submitted,

*[signature: Christina Brandt-Young]*

Christina Brandt-Young
Disability Rights Advocates
655 Third Avenue, 14th Floor
New York, NY  10017
(212) 644-8644, ext. 305
cbrandt-young@dralegal.org

Susan Mizner
Claudia Center
American Civil Liberties Union
         Foundation
39 Drumm Street
San Francisco, CA  94111
(415) 343-0762
smizner@aclu.org
ccenter@aclu.org

Stuart Seaborn
Monica Porter
Disability Rights Advocates
2001 Center Street, Fourth Floor
Berkeley, CA  94704
(510) 665-8644
sseaborn@dralegal.org
mporter@dralegal.org

Jessica P. Weber
Brown, Goldstein & Levy, LLP
120 E. Baltimore St., Suite 1700
Baltimore, MD  21202
(410) 962-1030
jweber@browngold.com

*Attorneys for Plaintiffs*